ZACHARIAH CHILDS,
Assignee of RANKIN, Sheriff, Appellee,
*against*
JAMES MORSE and LEVI OSGOOD, Appellants.

DEBT on gaol-bond.

The plaintiff declared in debt on gaol-bond, demanding 100 dollars, the penal sum of the bond; and alleged, that on the 16th *July*, 1800, by the consideration of *Horace Beardsley*, Esquire, Justice of the Peace, he recovered judgment against the defendant *James Morse*, for the sum of 11 dols. 37 cts. damages, and 2 dols. 4 cts. costs of suit. That on the 15th of *August* following, he purchased out his *alias* writ of execution upon the judgment, and delivered the same to the constable of *Cabot*, who committed *Morse* to the prison in *Danville*. That on the same day the defendants executed the bail-bond to *Rankin*, sheriff of the County, and keeper in chief of the prison, to indemnify him against any escape. That on the 10th of *October*, 1800, the defendant *Morse* escaped from the prison, having never paid the debt to the plaintiff, nor been any way legally liberated, whereby the sheriff became liable to pay the debt and costs to the plaintiff, and was thereby subjected to loss and damages, by reason whereof the said writing obligatory became forfeit. That the sheriff assigned the bond, according to the statute provision and form, to the plaintiff. The declaration then concludes with the usual profert and averment.

Writ served 19th of *December*, 1800.

To this declaration the defendants pleaded in bar.

*The certificate of a Judge of the County Court, and Justice of the Peace, prescribed in the act relating to gaols and gaolers, &c. and directed to the sheriff as keeper in chief of the gaol, is a sufficient bar to an action brought against him for the escape of a prisoner liberated in pursuance of such certificate, and if the prisoner had been admitted to the liberties of the gaol upon bail-bond, the certificate delivered by the Judge and Justice to the prisoner may be pleaded in bar to an action upon the bond, without setting forth circumstantially the mesne process.*

Childs
v.
Morse and
Osgood.

And now the defendants come, &c. and defend the force and injury, when, &c. and plead and say, that the plaintiff from having and maintaining his said action against the defendants ought to be barred. Because they say, that although true it is, that the plaintiff recovered judgment in his favour against the said *James Morse*, and took out execution on said judgment against the said *James*, and caused him to be committed to prison, as set forth in the plaintiff's declaration; and although true it is, that the defendant, said *James*, was admitted to the liberties of the said prison, and after the admission of the said *James* to the liberties of the said prison, the defendants executed and delivered to the plaintiff the bond or writing obligatory in the plaintiff's declaration described, yet they say, that after the commitment of the said *James* to prison as aforesaid, and after the making, executing, and delivering the said writing obligatory to the sheriff as aforesaid, and before the said *James* quitted the liberties of said prison, and before the liberties of the same were in any way broken by the said *James*, and before the assignment of said writing obligatory by the said sheriff to the plaintiff as set forth in his declaration, to wit, on the 16th day of *October*, A. D. 1800, *Samuel Chamberlain*, Esquire, then, and for more than sixty days then next following, one of the Justices of the Peace within and for said County of *Caledonia*, and *William Chamberlain*, Esquire, then, and for more than sixty days then next following, one of the Judges of the County Court, within and for said County, on application of said *James*, issued their certain precept in due form of law, called a citation, by them signed in their capacities aforesaid, in the words following, to wit:

STATE OF VERMONT.

*Caledonia,* ss. To the Sheriff of *Caledonia* County, his deputy, or either of the constables of *Peachum,* in said County, greeting.

Whereas *James Morse,* of *Cabot,* in said County, has this day made application to me, *William Chamberlain,* Esquire, one of the Judges of the County Court, within and for said County, and *Samuel Chamberlain,* Esquire, one of the Justices of the Peace for said County, stating to and informing us, that he is now confined a prisoner in the common gaol in *Danville,* in said County, by virtue of an execution in favour of *Zachariah Childs,* of, &c. for the sum of 11 dols. 37 cts. damages, and 2 dols. 4 cts. costs of suit, and for 25 cents for an original execution, and 25 cents more for an *alias,* and for 2 dols. 25 cts. for commitment fees, signed by *Horace Beardsley,* Esquire, one of the Justices of the Peace within and for the County of *Caledonia,* bearing date the 15th day of *August,* A. D. 1800, and returnable within sixty days from the date of the same, directed to the sheriff of *Caledonia* County, his deputy, or either of the constables of *Cabot,* in said County, issued on a judgment recovered before the said *Horace Beardsley,* Esquire, Justice as aforesaid, at a Court holden at *Cabot* the 16th day of *June,* 1800, on a proper action of contract and promise, and that the said *James* hath not estate either real or personal, in possession, remainder, or reversion, to the value of twenty dollars, necessary apparel and bedding for himself and family excepted, nor sufficient to pay the damages and costs for which he is committed to prison, and that he has not disposed of the same since his commitment, except for the necessary subsistence

of himself and family, nor sufficient to support himself in said prison, and praying to be discharged from said imprisonment, on taking the oaths prescribed in an act, entitled, an act relating to gaols and gaolers, and for the relief of persons imprisoned therein.

These are therefore,

By the authority of the State of *Vermont,*

To command you to make service to *Jonathan Ware,* Esquire, of *Peachum* aforesaid, attorney for said *Zachariah Childs,* that he, before said *William Chamberlain,* one of the Judges as aforesaid, and *Samuel Chamberlain,* one of the Justices of the Peace as aforesaid, on the 10th day of *November* next, at two o'clock in the afternoon, at the house of *John Baldwin,* of *Danville* aforesaid, appear and show cause, if any he has, why the said *James* should not be admitted to the oaths aforesaid, and be thereupon discharged from his said imprisonment.

Hereof fail not, but of this writ and your doings hereon make due return according to law.

Dated at *Danville,* the 16th of *October,* A. D. 1800.

> *William Chamberlain,* Judge.
> *Samuel Chamberlain,* Just. Pacis.

Which said execution, described in said citation, is the same execution described in the plaintiff's declaration, and the same issued on a judgment recovered in a proper action of contract and promise; and the said *Ware,* the defendants aver, was the attorney who brought forward said suit on which said execution issued as aforesaid; and the said *James,* on the 18th day of *October* aforesaid, caused the said citation to be delivered to *Benjamin Sias,* who then, and

for sixty days then next following, was a legal deputy under *John Rankin*, Esquire, sheriff of said County of *Caledonia*, to serve and return according to law ; and the said *Benjamin*, so being sheriff's deputy as aforesaid, afterwards, to wit, on the day and year last aforesaid, duly and legally served said citation on the said *Jonathan Ware*, and duly and legally endorsed his return of service on the said citation in the words and figures following, to wit :

*October* 18th, A. D. 1800.

Then served the within precept by delivering a true and attested copy of the same to *Jonathan Ware*, of *Peachum*, with my return thereon.

Attest,

*Benjamin Sias*, Deputy Sheriff.

Fees, 3 dols. 50 cts.

Which said citation being served as aforesaid, and duly returned to said Justices at the time and place therein appointed for trial, the said *William*, Judge as aforesaid, and the said *Samuel*, Justice as aforesaid, then and there opened their Court for the purpose in said citation expressed, and the parties being called in Court appeared; whereupon it was then and there considered by said Justices, that said Court be continued until the 12th day of *November* aforesaid, at two o'clock in the afternoon, to be holden at the same place; at which time and place the said Justices opened said Court agreeably to said continuance, and the parties being called, the said *James* appeared; but the said *Zachariah Childs* being three times publicly called, did not appear; whereupon, after examining said *James Morse*, upon inter-

rogatories under oath relative to the situation and cir-
cumstances of his property, the said Justices were of
opinion, and it was by them then and there consider-
ed, that the said *James* was a proper subject of relief
under the act in such cases made and provided, and
that he ought to be admitted to the oath by the statute
in such case made and provided, and he thereupon
be discharged from his imprisonment; and the said
Justices did then and there administer to the said *James*
the oath by the said statute in that case made and pro-
vided, and did then and there execute and deliver to
the said *James* a certificate in writing by them sub-
scribed in their capacities as aforesaid, in the follow-
ing words, to wit:

STATE of VERMONT.

*Caledonia*, ss.   To all people to whom these pre-
sents shall come, Greeting:

Whereas *James Morse*, a prisoner in the common
gaol in *Danville*, in the County of *Caledonia* afore-
said, on an execution at the suit of *Zachariah Childs*,
of, &c. for the sum of 11 dols. 37 cts. damages, and
for 2 dols. 4 cts. costs of suit, signed by *Horace
Beardsley*, Esquire, one of the Justices of the Peace
within and for said County of *Caledonia*, and dated
at *Cabot* the 15th day of *August*, A. D. 1800, has
this day taken the oath prescribed in an act entitled,
an act relating to gaols and gaolers, and for the relief
of persons imprisoned therein, the said *Zachariah
Childs* having been duly notified did not attend; and
in our opinion the said *James Morse* ought to be dis-
charged.   Witness our hands at *Danville*, the 12th
day of *November*, A. D. 1800.

> *William Chamberlain*, Judge.
> *Samuel Chamberlain*, Just. Pacis.

And the said Justices did then and there execute and deliver to *John Rankin*, then sheriff as aforesaid, and keeper in chief of the gaol in said *Danville*, one other certificate in writing, subscribed with their proper hands, in their capacities as aforesaid, in the following words, to wit:

Childs<br>v.<br>Morse and<br>Osgood.

*State of Vermont.*
*Caledonia County*, ss.

To *John Rankin*, keeper in chief of the gaol in the County of *Caledonia*, Greeting:

Whereas *James Morse*, a prisoner in your custody, on an execution of *Zachariah Childs*, of, &c. (describing the suit, execution, &c. as in the certificate to the prisoner,) has this day taken the oath prescribed in an act entitled, an act relating to gaols and gaolers, &c. the said *Zachariah* having been duly notified did not attend; and in our opinion the said *James Morse* ought to be discharged.

Witness our hands at *Danville*, this 12th day of *November*, 1800.

<em>William Chamberlain</em>, Judge.<br><em>Samuel Chamberlain</em>, Just. Pacis.

And said *James* was thereupon, by the order and decision of said Justices, discharged from his said imprisonment, and from said prison and liberties of the same, according to the form, force, and effect of the statute in that case made and provided, and did thereupon depart from said prison, and the liberties of the same, and go at large whither he would; and the said *James* never escaped from said imprisonment, nor from the liberties of the said prison, before he was duly and legally liberated and discharged from

Childs
v.
Morse and
Osgood.

his said imprisonment as aforesaid ; which said discharge and departure from said prison, is the same escape and going at large after his said commitment and imprisonment set forth and complained of in the plaintiff's declaration. All which the defendants are ready to verify and prove in such manner as the Court shall order and appoint. Wherefore the defendants pray judgment of the Court here, whether the plaintiff from having and maintaining his said action against the defendants ought not to be barred, and they recover their costs. By their attorney,

*William Mattocks.*

And the plaintiff to the defendants' plea in bar in manner and form above pleaded, replies and says, that he ought not to be barred, because, he says, that the said plea in bar, and the matters therein contained, are insufficient in law to bar the plaintiff from having and maintaining his said action against them, and this he is ready to verify, whereof he prays judgment. For his debt and costs and causes of demurrer, the plaintiff, according to the statute in such case made and provided, makes and sets down the following, to wit :

First. That the citation in the plea in bar mentioned, is not to the creditor as is required by the statute.

Secondly. That no service of such citation has been made on the creditors. By his attorney,

*Jonathan H. Hubbard,**

* As this may be considered as a leading case, the pleadings are reported more at large than might seem otherwise necessary.....*Reporter.*

To this replication the defendants demurred.

*Hubbard,* for the demurrant. The statute upon which the plea in bar is said to be predicated in its operation when correctly pursued, deprives the creditor of a common law right, and therefore ought to be strictly construed. If the defendants would shelter themselves under the statute process, they must show that it has been strictly pursued.

We demur to their plea,

First. Because the statute provides, that the citation must in all cases be to the creditor, " and such Justices, or either of them to whom application shall be made, shall issue a citation to the *creditor or creditors* in such execution, of such prisoner's desire of taking the privilege and benefit allowed by this act." Here the statute is express; but the citation in the plea is to *Jonathan Ware,* attorney for said *Zachariah Childs.*

The citation being issued to the creditor, the statute then provides three several modes of serving such citation, the latter to be resorted to only in case the former cannot be effected.

First. Upon the creditor personally, or upon his executor or administrator ; and in case he or they do not live within this State, *then,*

Secondly. " *Upon* his or their agent or attorney, *who brought forward the suit ;* but in case there be no such agent or attorney living within the State," then

Thirdly. " A true and attested copy of the citation shall be left with the Clerk of the Court or Justice of the Peace by whom the execution was signed."

When a statute points to a second alternative, which is not to be resorted to unless the first cannot be had, it is necessary, in resorting to such alternative, to set forth in the process that the first could not be effected; or else there is no foundation for the process upon the second.

This citation does not set forth, that *Zachariah Childs*, the creditor, lived without the State, but simply summons *Jonathan Ware* to appear and show cause, &c. which, if the creditor *Childs lived* within this State, (which is a comprehensive term, and implies not only habitancy, but occasional residence,) would be manifestly bad; and as the citation does not set forth that the creditor lived without the State, is certainly ill.

Further. It is not merely the attorney or agent of the creditor which the citation must be served upon, but particularly " the attorney or agent who brought forward the suit on which the judgment whereon the person stands committed was rendered." Here the citation goes simply to *Jonathan Ware*, attorney to *Zachariah Childs*.

Therefore we make our second exception to the process, that no service of such citation has been made on the *creditor*. The whole object of the citation is to notify him, and this, the law says, in case he lives out of the State shall be done by serving the citation, not upon any person who may have a general power of attorney, or a letter of attorney to transact any particular piece of business, but on the particular agent or attorney who brought the suit. There is such apparent reason for this statute distinction, that we trust the Court will see that it is carried into effect.

We have an additional reason to offer, why the
Court will be peculiarly careful to see that this sta-
tute process is correct : because the errors of the
Court who issue it cannot be rectified by any other
mode than by decision upon the pleadings to an ac-
tion instituted by a creditor who has been injured by
defective and illegal process, as no appeal lies from
this Court of Gaol Delivery, nor are their proceed-
ings subject to revision, or their decisions to reversal,
by writ of error.

*Mattocks*, for the defendant, arose to reply, but
was interrupted by the Court.

*Curia.* The citation appears to have been incor-
rectly drafted, although the object of the statute has
been obtained by the service of it. But the Court do
not incline to hear further upon exceptions to the
mesne process of what is commonly called the Court
of Gaol Delivery. They wish to hear a question
of greater magnitude argued, which may decide the
sufficiency or insufficiency of the bar, *over* any de-
fects in the primary process.

It appears by the plea, that the defendant *Morse*,
under the provisions of the statute relating to gaols
and gaolers, has applied to a Justice of the Peace and
a Judge of the County Court, for a citation to his cre-
ditor, to show why he should not be admitted to the
benefits of the act. That such proceedings were had
by the Court. That on the 12th of *November*, 1800,
they admitted the defendant *Morse* to the oath pre-
scribed in the act, and gave their opinion that he
ought to be discharged from his imprisonment, and
on the same day made and subscribed a certificate in

Childs<br>v.<br>Morse and<br>Osgood.

the statute form, and delivered it to the prisoner, and also another certificate, which they delivered to the sheriff as keeper in chief of the prison, in both which, in the words of the statute, they declared, that in their opinion the prisoner *Morse* ought to be discharged.

The question is, what is the legal operation and effect of these certificates?

The condition of the bond declared upon is in substance that the prisoner should remain within the liberties of the prison until legally discharged. The bond is prosecuted by the assignee of the sheriff, and the plaintiff stands in his shoes. If the mesne process is defective, will these certificates operate a legal discharge of the prisoner?

It appears, that the Legislature, in pursuance of the spirit of the constitution, have provided, that a poor citizen, imprisoned for debt on contract, shall not be deprived of his personal liberty upon proof of his poverty before a proper Court. A Court has been constituted for this purpose, from whose decision there is no appeal, and no writ of error lies. But the act gives them plenary power to correct defects in their process, and to tax costs against the applicant. The Court may likewise examine the prisoner upon a *voire dire*, may hear evidence to controvert his testimony, and may adjourn from time to time, until they obtain all the evidence of which the subject is capable. If in their opinion he ought not to be admitted to the oath, he must remain in prison; and if he make a second application, it must be to the same magistrates if in office; but if the Court are of opinion that he ought to be admitted to the oath, it is then administered, and the Judge and Justice make out two certificates under their official signatures,

òne to be delivered to the prisoner, and the other to the keeper of the gaol, certifying that such oath has been administered, and that in their opinion the prisoner ought to be discharged. The prisoner, after paying certain charges, in the words of the statute, shall thereupon be discharged, and *his body* be thereafter exempted from execution for the same debt.

In what situation do these proceedings place the sheriff or the bail? In case the debtor is a close prisoner, and the certificate is delivered to the sheriff, and doubts should arise as to the correctness of the mesne process, is the sheriff to be subjected to this dilemma, either to liberate his prisoner, and risk an action for an escape, founded on the supposed irregularity of the mesne process; or shall he, by closing his prison bars on the debtor, expose himself to an action for false imprisonment? or shall this certificate be a sufficient justification to the sheriff, however irregularly obtained?

Will the case materially differ, if the debtor be admitted to the liberties of the prison? In such case, what will be the effect and operation as to the sheriff and the bail? for the sheriff is here interested. Although the action is brought by his assignee, it may be but a preparatory step to an action against him for an escape; for should the bail fail to respond the debt, an action lies directly against the sheriff, and he would be driven to the very defence made in the plea in bar; and in such defence the effect and operation of the certificate would present itself in the same point of view as it respected the sheriff, as if the debtor had been his close prisoner.

In an action against the bail, the same defence is made, and the pleadings will turn upon the legal ef-

Childs
v.
Morse and
Osgood.

fect of the certificates, abstracted from any defects in the mesne process before the Court of Gaol Delivery.

Upon the point of the legal effect and operation of these certificates, it appears to the Court, that as the statute does not go to defeat the debt, but merely to discharge the imprisoned debtor, and to exempt his body from a subsequent commitment upon the same demand, as the Legislature have constituted a Court of original and exclusive jurisdiction, to issue mesne process to decide upon the regularity of such process, and have finally rested the discharge of the prisoner solely upon their opinion after hearing, that all defects in such process can only be taken advantage of before them. That when the Justice and Judge make out the statute certificates, an exhibition of them to the sheriff, or even of that peculiarly addressed to him as keeper in chief of the gaol, is a sufficient warrant for him to liberate the prisoner if closely confined, and a sufficient justification against any escape, if the prisoner be admitted to the liberties. That the certificate alone, without setting forth circumstantially the mesne process, is a sufficient bar to an action of debt on the prison-bond, when brought against the bail.

These are the present impressions of the Court. They are, however, inclined to hear argument.

Upon these observations being made by the Court, the counsel for the plaintiff declined further argument, and judgment was entered for the defendant.

*J. H. Hubbard* and *Jonathan Ware*, for the plaintiff.
*William Mattocks*, for defendants.